**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MILDRED ALICE ROBINSON,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC and TOWER FEDERAL CREDIT UNION,<br><br>Defendants. | Civil Action No. 24-713-RGA |

MEMORANDUM OPINION

Antranig N. Garibian, GARIBIAN LAW OFFICES, P.C., Wilmington, DE; McKenzie R. Czabaj, CONSUMER JUSTICE LAW FIRM, Scottsdale, AZ,

Attorneys for Plaintiff.

Joe P. Yeager, MARGOLIS EDELSTEIN, Wilmington, DE; Jennifer l. DeFlitch, MARGOLIS EDELSTEIN, Philadelphia, PA,

Attorneys for Defendant Tower Federal Credit Union.

August 18, 2026

**ANDREWS, U.S. DISTRICT JUDGE:**

Plaintiff Mildred Alice Robinson brought this action against Defendant Tower Federal Credit Union ("Tower"), a furnisher of credit information, under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (FCRA).[1] (D.I. 1 at ¶¶ 132–37). Plaintiff claims that Tower violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's credit dispute. (*Id.* at ¶ 134). Plaintiff asserts she is entitled to damages under 15 U.S.C. § 1681n for Tower's willful violation, or, alternatively, under 15 U.S.C. § 1681o for Tower's negligent violation. (*Id.* at ¶¶ 135–36).

Both parties move for summary judgment. (D.I. 44, 46). I have reviewed the parties' briefing. (D.I. 45, 47, 49, 51, 52). For the reasons set forth below, Plaintiff's motion is granted-in-part and denied-in-part, and Tower's motion is denied.

## I. BACKGROUND

In February 2024, Plaintiff reviewed her Equifax credit file and identified three Tower accounts that did not belong to her listed on it. (D.I. 1 at ¶¶ 75–77). One of the accounts was open; the other two were closed. (D.I. 48-16, Ex. P at 1–3). Plaintiff also identified a Baltimore address that did not belong to her. (*Id.* at 2; *see* D.I. 1 at ¶ 78). In early March, Plaintiff sent a dispute letter to Equifax regarding the three accounts and the incorrect address, requesting Equifax investigate, correct any errors, and send a corrected copy of her credit report. (*Id.* at ¶¶ 82–84; *see* D.I. 48-16, Ex. P). Equifax sent Tower multiple Automated Credit Dispute Verifications ("ACDV") forms through the standard online system credit reporting agencies ("CRA"), such as

[1] Plaintiff initially brought this action against an additional defendant, Equifax Information Services. (*See* D.I. 1). Plaintiff and Equifax stipulated to dismissal of all claims and defenses between them. (D.I. 25). The FCRA claim was brought only against Tower, and it is the only remaining claim in the case.

Equifax, use to verify information provided by furnishers of credit information. (*Id.* at ¶ 86; D.I. 45 at 1; D.I. 47 at 3–5).[2] Tower returned two ACDV forms, one on March 20, 2024, and the other on April 10, 2024, verifying that the disputed information was correct. (D.I. 45 at 3; D.I. 47 at 3–4; *see* D.I. 48-4, Ex. D; D.I. 48-5, Ex. E). Tower has since admitted that its responses verifying the information were incorrect. (D.I. 45 at 4).

The parties filed cross-motions for summary judgment on the reasonableness of Tower's investigation, whether Plaintiff suffered damages,[3] and whether Tower's actions were willful. (*See* D.I. 45 at 12–18; D.I. 47 at 6–20). Both parties recycled substantial portions of their opening briefs when submitting their answering briefs.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

---

[2] Plaintiff's Complaint indicates a single ACDV form was sent to Tower. (D.I. 1 at ¶ 87). Plaintiff's brief in support of her motion for partial summary judgment identifies multiple ACDV forms sent from Equifax to Tower, two of which are in the record. (D.I. 47 at 3–5).

[3] Plaintiff moves for partial summary judgment on the existence of damages, with the amount of damages to be determined by a jury. (D.I. 47 at 19).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## III. DISCUSSION

### A. Requests for Admission

Plaintiff made twenty-one requests for admission ("RFAs") on September 19, 2024. (D.I. 48-2, Ex. B; *see* D.I. 21). Tower concedes that it did not respond to Plaintiff's RFAs. (D.I. 51 at 9–10). To be clear, Tower never responded, and it offers no defense for its failure to respond. Instead, Tower argues that the "admissions do not establish in the record that Tower's investigation

was unreasonable nor that Plaintiff suffered any damages as a result of Tower's conduct." (*Id.* at 9).

Plaintiff argues that by failing to respond to her RFAs within thirty days of being served, Tower has admitted "(1) its reporting was inaccurate; (2) it failed to reasonably investigate Plaintiff's disputes; (3) it failed to maintain procedures to reasonably investigate consumer disputes; and (4) verifying inaccurate information is likely to cause harm to the disputing consumer." (D.I. 47 at 8 (internal citations to the RFAs omitted)).

"A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection." FED. R. CIV. P. 36(a)(3). "Matters deemed admitted due to a party's failure to respond to requests for admission are 'conclusively established' under Federal Rule of Civil Procedure 36(b), and may support a summary judgment motion." *Sec'y U.S. Dep't of Labor v. Kwasny*, 853 F.3d 87, 91 (3d Cir. 2017) (internal citation and footnote omitted).

Many of the admissions do not go to disputed portions of Plaintiff's claims.[4] Relevant to the disputed elements are RFAs fourteen, fifteen, seventeen, eighteen, nineteen, twenty, and twenty-one. The relevant RFAs state:

- "Admit that You failed to conduct an investigation of Plaintiff's dispute(s) of the Tradeline(s) at Issue as required by 15 U.S.C. § 1681s-2b." (D.I. 48-2, Ex. B at RFA 14).

[4] RFAs one through ten address whether Towers reporting on the ACDV forms were inaccurate. (*See* D.I. 48-2, Ex. B at RFAs 1–10). RFA eleven and twelve ask Tower to admit that it received dispute forms concerning the three Tower accounts. (*Id.* at RFAs 11–12). RFA thirteen asks Tower to admit that it should not have verified the disputed information (*id.* at RFA 13), and RFA sixteen asks Tower to admit that it should have taken action to correct the information (*id.* at RFA 16). Tower does not dispute that it received the ACDV forms and reported inaccurate information that it should have corrected. (D.I. 45 at 3–4; D.I. 45-2, Ex. B at 75:5–12). The failure to respond to these RFAs remains an admission in this case if they later become relevant.

- "Admit that You failed to review all relevant information provided by one or more national CRAs pursuant to section 1681i(a)(2) of the FCRA with respect to Plaintiff's dispute(s) of the Tradeline(s) at Issue as required by 15 U.S.C. § 1681s-2b." (*Id.* at RFA 15).
- "Admit that You do not have policies or procedures in place that require You to modify, delete, or permanently block the reporting of an item of information that is found to be inaccurate or incomplete or unverifiable." (*Id.* at RFA 17).
- "Admit that You do not have policies or procedures in place that require You to conduct an investigation of disputed information received from one or more national CRAs." (*Id.* at RFA 18).
- "Admit that You do not have policies or procedures in place that require You to review all relevant information provided by one or more national CRAs in relation to a consumer's dispute." (*Id.* at RFA 19).
- "Admit that verifying the Tradeline(s) at Issue as belonging to Plaintiff to one or more national CRAs, is likely to deprive that consumer of credit opportunities." (*Id.* at RFA 20).
- "Admit that verifying the Tradeline(s) at Issue as belonging to Plaintiff to one or more national CRAs, is likely to harm that consumer." (*Id.* at RFA 21).

Under Federal Rules of Civil Procedure 36, Tower's failure to respond to these RFAs are deemed admissions that conclusively establish the fact. The admissions are analyzed where relevant below.

**B. Violation of 15 U.S.C. § 1681s-2(b)**

Both parties move for summary judgment on whether Tower violated the FCRA. (D.I. 45 at 12–13; D.I. 47 at 9–17).

Under the FCRA, a consumer may submit a dispute to a CRA regarding the completeness or accuracy of information contained in his or her CRA file. 15 U.S.C. § 1681i(a). This includes disputes over the completeness or accuracy of information supplied to a CRA by third-party furnishers of information. *SimmsParris v. Countywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011). After a CRA receives a dispute, it must notify any furnisher of information that is relevant to the dispute. *Id.*; 15 U.S.C. § 1681i(a)(2). Upon receiving notice from the CRA, the furnisher of the information must:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)];
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

The FCRA provides a private cause of action for negligent or willful violation of 15 U.S.C. § 1681s-2(b) by furnishers of information. *Seamans v. Temple Univ.*, 744 F.3d 853, 867–68 (3d Cir. 2014); *SimmsParris*, 652 F.3d at 358. Courts in the Third Circuit have generally required a plaintiff prove: "(1) she sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information." *Parker v. Nationstar Mortg. LLC*, 2015 WL 6472223, at *7 (W.D. Pa. Oct. 27, 2015); *see Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs.*, 2016 WL 3473347 at *6 (E.D. Pa. June 24, 2016); *Armour*

*v. Sallie Mae, Inc.*, 2010 WL 3724524, at *2 (D.N.J. Sept. 14, 2010). Within the third element, "(1) the plaintiff must make a prima facie showing that the furnisher provided incomplete or inaccurate information, and (2) the plaintiff must show that the incompleteness or inaccuracy was the product of an unreasonable investigation." *Ritz v. Equifax Info. Servs., LLC*, 2025 WL 1303945, at *3 (3d Cir. May 6, 2025) (cleaned up); *see Calloway v. Green Tree Servicing, LLC*, 607 F. Supp. 2d 669, 675 (D. Del. 2009).

Tower does not dispute that Plaintiff sent notice of her dispute to a CRA and that the CRA notified Tower of the dispute by sending two ACDV forms.[5] (*See* D.I. 45 at 1–2). Thus, the first two elements of Plaintiff's 1681s-2(b) claim are met. Tower also does not dispute that the information it provided to Equifax, the CRA, was incorrect. (*Id.* at 4). Therefore, the first aspect of the third element of Plaintiff's claim is met. The only remaining element that Plaintiff must show is that "the incompleteness or inaccuracy was the product of an unreasonable investigation." *Ritz*, 2025 WL 1303945, at *3.

In her motion for summary judgment, Plaintiff argues that there is no genuine dispute of material fact that Tower's investigation was not reasonable. (D.I. 47 at 9–17). To support her argument, Plaintiff points to Tower's admission that it did not investigate, Tower's admission that it did not review all of the information it had related to Plaintiff and her dispute, Tower's admission and other evidence that it did not have procedures that properly guided an investigation, and evidence that Tower did not maintain records of disputes and investigations. (*Id.* at 15–17). Tower responds that a "reasonable investigation" does not require "an exhaustive or extraordinary one"

[5] The two ACDV forms are the March 1, 2024, and March 23, 2024, forms. (D.I. 45 at 9; D.I. 49 at 4; D.I. 48-4, Ex. D; D.I. 48-5, Ex. E). Those forms appear to relate to one of the three accounts Plaintiff disputed. It appears that there are no still-existing records relating to the other two accounts. (D.I. 47 at 5).

and that its procedures are only required to be what a "reasonably prudent person would undertake." (D.I. 51 at 11). Tower moves for summary judgment that its investigation was reasonable. (D.I. 45 at 12–13). In support of its motion for summary judgment, Tower offers the same arguments it offered in defense of Plaintiff's motion on the same issue. (*Id.* at 13).

The Third Circuit has explained that what constitutes a "reasonable" investigation for a particular dispute is a factual determination based on the investigational procedure used, the balance between the risks of inaccuracy with the costs of deeper investigating, and the content of the consumer's dispute notice. *Seamans*, 744 F.3d at 864–65.

Based on Tower's admissions, it "failed to conduct an investigation of Plaintiff's dispute(s)." (D.I. 48-2, Ex. B at RFA 14). Tower attempts to identify evidence of an investigation, stating that it "reviewed the dispute, compared the name and last four numbers of the social security number, and noted that the accounts complained of were not delinquent." (D.I. 45 at 13). However, an "admission is not merely another layer of evidence, upon which the district court can superimpose its own assessment of weight and validity. It is, to the contrary, an unassailable statement of fact that narrows the triable issues in the case." *Airco Industrial Gases, Inc. v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028, 1037 (3d Cir. 1988). Facts established by admission are "established facts" such that the admitting party cannot point to contrary evidence on summary judgment to create a genuine issue of material fact. *Kwasny*, 853 F.3d at 91. Thus, there is no dispute that Tower did not investigate Plaintiff's disputes.[6]

In general, there cannot be a "reasonable investigation" if there was no investigation at all. This general rule applies to the present case. Upon receiving notice of Plaintiff's disputes from

---

[6] As there was no investigation at all, I do not consider other evidence or admissions related to the investigation such as Tower's investigatory procedures or its failure to review all relevant documents.

the CRA, the duties of Section 1681s-2(b)(1) are implicated. *SimmsParris*, 652 F.3d at 358. One of these duties is to "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A). Not only did Tower have an obligation to investigate, but both of the ACDV forms it received identified the disputed information that the investigation should have focused on. "Consumer states this account belongs to someone else with similar name as hers named Mildred L Robinson who stays at [street address] Baltimore Maryland 21230 so this be remove." (D.I. 48-4, Ex. D). "Disputed FA – [street address] Baltimore MD 21230." (D.I. 48-5, Ex. E). With the duty to investigate and knowledge of the specific credit information it had the obligation to investigate, Tower cannot claim its lack of any investigation was a "reasonable investigation." Nor can Tower introduce evidence contradicting its admission. Thus, there is no genuine factual dispute on the second aspect of the third Section 1681s-2(b) element.

Plaintiff has shown that there is no genuine factual dispute on any element of her Section 1681s-2(b) claim. Thus, Plaintiff's motion for summary judgment that Tower violated Section 1681s-2(b) is granted. Tower's cross-motion is denied.

### C. Damages

Both parties move for summary judgment on the availability of damages. (D.I. 45 at 14–18; D.I. 47 at 17–20). Tower argues that Plaintiff cannot show that she is entitled to any damages, actual or punitive. (D.I. 45 at 15–18). Plaintiff argues that summary judgment should be granted that she is entitled to actual and punitive damages, with the jury to determine the amount. (D.I. 47 at 17–20).

The damages to which a plaintiff is entitled depend on whether the furnisher negligently or willfully violated 15 U.S.C. § 1681s-2(b). *Seamans*, 744 F.3d at 867–68. "Sections 1681n and 1681o of Title 15 respectively . . . [outline the] recovery for actual damages and attorneys fees and

costs, as well as punitive damages in the case of willful noncompliance."[7] *Philbin v. Trans Union Corp.*, 101 F.3d 957, 962 (3d Cir. 1996). A plaintiff is entitled to actual damages for both negligent and willful violations, but a plaintiff can only receive punitive damages for a willful violation. 15 U.S.C. § 1681o(a); 15 U.S.C. § 1681n(a).

**1. Evidence of Actual Damages**

Plaintiff argues that summary judgment should be granted that she is entitled to actual damages for emotional distress, lost time, and expenses. (D.I. 47 at 18–19). Tower argues that Plaintiff cannot show she suffered any actual damages because there is no evidence tying hardships with credit application to the violation and there is no evidence that Plaintiff suffered emotional distress as a result of Tower's violation. (D.I. 45 at 15–17).

---

[7] After a negligent violation of the FCRA, a plaintiff is entitled to:

> an amount equal to the sum of—
> (1) any actual damages sustained by the consumer as a result of the failure; and
> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681o(a). After finding the violation was willful, a plaintiff is entitled to:

> an amount equal to the sum of—
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
> (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
> (2) such amount of punitive damages as the court may allow; and
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a).

Plaintiff has conceded that the harm to her ability to obtain credit did not occur in the proper timeframe. (D.I. 49 at 17). Contrary to Tower's focus on financial harm, "damages for violations of the FCRA allow recovery for humiliation and embarrassment or mental distress even if the plaintiff has suffered no out-of-pocket losses." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 719 (3d Cir. 2010). Tower's evidence that Plaintiff was extended credit after the violation does not preclude damages either. "[A] consumer may be awarded actual damages even if she is able to obtain credit after explanation of the inaccuracy." *Id.* In addition to damages for emotional distress, "[t]ime spent trying to resolve problems with the credit reporting agency may also be taken into account." *Id.*

Plaintiff has identified evidence to support her emotional distress claim including deposition testimony regarding the impact Tower's violation had on her mental state. (D.I. 48-8, Ex. H at 28:7–29:8). Contrary to Tower's argument, Plaintiff does not necessarily need documentation from medical professionals to corroborate her emotional distress claim. "If a jury accepts testimony of a plaintiff that establishes an injury without corroboration, the plaintiff should be allowed to recover under the FCRA. The fact that the plaintiff's injuries relate to the stress and anxiety caused by the defendant's conduct does not change that." *Cortez*, 617 F.3d at 720. Similarly, uncontested evidence that Plaintiff simultaneously experienced independent sources of emotional distress does not preclude her claim of damages for emotional distress stemming from Tower's FCRA violation. It is "sufficient that, as with most other tort actions, a FCRA plaintiff produce evidence from which a reasonable trier of fact could infer that the inaccurate entry was a 'substantial factor' that brought about the [injury]." *Philbin*, 101 F.3d at 968.

Plaintiff has also identified evidence supporting her damages claim for lost time attempting to resolve Tower's inaccurate reporting. (*See* D.I. 47 at 17–18, citing D.I. 48-8, Ex. H at 16:9–

20:9). Tower has not argued against the legal grounds for these damages or Plaintiff's evidence supporting them.

Plaintiff has identified sufficient evidence to create a dispute of material fact related to the availability of actual damages. As such, Tower's motion for summary judgment that Plaintiff cannot prove any actual damages is denied. However, there are genuine factual questions whether Plaintiff's evidence shows that she suffered emotional distress and whether Tower's FCRA violation was a substantial factor in Plaintiff's emotional distress. These are questions reserved for a jury to answer. Therefore, Plaintiff's motion for summary judgment that she is entitled to actual damages is denied.

**2. Willful Violation**

Tower argues that Plaintiff is not entitled to punitive damages because there is no evidence that its violation was willful. (D.I. 45 at 17–18). Plaintiff makes the motion in reverse, arguing that the evidence conclusively establishes that Tower's violation was a result of its reckless disregard of its obligations, and thus, Plaintiff is entitled to punitive damages. (D.I. 47 at 19–20).

The parties do not dispute that punitive damages are available to a plaintiff after finding that the defendant willfully violated the FCRA. *See* 15 U.S.C. § 1681n(a)(2). Instead, the parties dispute whether the evidence shows Tower's violation was willful. "Liability for willful violations will lie not only in the case of knowing violations of the statute but also if a defendant acts with reckless disregard of the statute's terms." *Seamans*, 744 F.3d at 868 (internal quotation omitted). However, "[a] defendant's conduct is reckless only if it was 'objectively unreasonable' in light of 'legal rules that were clearly established at the time.'" *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 249 (3d Cir. 2012) (quoting *Safeco Ins. Co. of Am v. Burr*, 551 U.S. 47, 69–70 (2007)).

Tower's admissions, particularly that it did not investigate, did not review all relevant information, and did not correct inaccurate information related to Plaintiff's dispute (D.I. 48-2, Ex. B at RFA 14–16), indicate a violation of the statute requiring Tower to complete each action. 15 U.S.C. § 1681s-2(b)(1)(A, B & E). However, Tower identifies evidence that its response to Plaintiff's dispute was an error and out of line with its normal policies and procedures.[8] (D.I. 45 at 18). This evidence raises a genuine factual dispute whether Tower's violation was "objectively unreasonable." *Fuges*, 707 F.3d at 249. It is the role of a jury to determine this question. Plaintiff's motion for summary judgment that Tower's violation was willful (D.I. 47 at 19–20), and Tower's motion for summary judgment that its violation was not willful (D.I. 45 at 17–18), are both denied.

## IV. CONCLUSION

An appropriate order will issue.

[8] Tower admitted it did not have policies or procedures "that require [it] to modify, delete, or permanently block the reporting of an item of information that is found to be inaccurate or incomplete or unverifiable," "conduct an investigation of disputed information received from one or more national CRAs," or "review all relevant information provided by one or more national CRAs in relation to a consumer's dispute." (D.I. 48-2, Ex. B at RFA 17–19). As these admissions are taken as an established fact, Tower cannot introduce evidence challenging the admissions. *Airco*, 850 F.2d at 1037. However, I do not think that its admission to these RFAs precludes evidence of policies related to other aspects of the investigation, informal practices, or policies and procedures that do not "require" an investigation, review of all information, or correction.